*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
EUGENE G. STRAVINSKY, II, :
*et al.*, :
                Plaintiffs, : Civil Action No. 17-5112(FLW)
:
        v. :
: **OPINION**
WELLS FARGO BANK, N.A. and :
JOSE P. MARTINS, :
:
                Defendants. :
_____:

**WOLFSON, United States District Judge:**

    Plaintiffs Eugene Stravinsky II, Jeanette Stravinsky and Advantage Financial Mortgage Bankers, Inc. ("Advantage") (collectively, "Plaintiffs") filed this suit against Wells Fargo Bank, N.A. ("Wells Fargo" or Defendant"),[1] claiming that Wells Fargo is vicariously liable for a criminal mortgage fraud perpetuated by, *inter alia*, a former employee of the bank. In the instant matter, Wells Fargo moves to dismiss the Complaint in its entirety. For the reasons set forth below, the Motion is **GRANTED**.

---

[1] Plaintiffs also sued Jose P. Martins, a former employee of Wells Fargo; however, it is unclear whether Martins was served, since Plaintiffs did not file any proof of service. To the extent Martins was served and failed to answer, Plaintiff is directed to seek default. On the other hand, if Martins has not been served, the Court will determine whether a dismissal under Rule 4(m) is appropriate. To the extent one exists, Plaintiffs shall file the proof of service as to Martins within 3 days from the date of the Order accompanying this Opinion.

1

## BACKGROUND

The following allegations are taken from Plaintiffs' Complaint and are assumed as true. On or about April 14, 2011, Advantage, a mortgage company, and Wells Fargo entered into a Loan Purchase Agreement, in which Wells Fargo agreed to buy certain loans from Advantage upon approval of the mortgage applications. Compl., ¶ 11. In January 2013, Martins, who was working at Wells Fargo at that time,[2] and eight other co-conspirators were indicted for disbursing the proceeds of fraudulently obtained loans. *Id.* at ¶ 12. More specifically, these criminal defendants were indicted as a result of a wide-scale mortgage fraud investigation conducted by the U.S. government and the state of New Jersey. *Id.* at ¶ 13. The indictments were based on transactions from March 2011 through November 2012, wherein "Defendant Martins, along with co-conspirators submitted fraudulent loan applications and related documents, such as false income statements of applicants and false appraisals, to financial institutions such as Advantage Financial." *Id.* at ¶ 14.

In the Complaint, Plaintiffs further detail the scheme in which Martins and others would create "straw buyers" in order to obtain loan proceeds when the mortgage loans were funded. *Id.* at

---

[2] Although Plaintiffs do not clearly allege Martins' former title at Wells Fargo, presumably, he was either a mortgage loan processor or underwriter. Indeed, according to Plaintiffs, Martins facilitated the loan approval process.

2

¶ 15. According to Plaintiffs, "Martins used his position at Wells Fargo to create misleading certifications that certain bank accounts contained a specific amount of money, when in actuality, they contained less." *Id.* at ¶ 17. Allegedly, one of Advantage's own loan officers, Joseph DiValli, conspired with Martins to perpetuate the fraud. *Id.* at ¶ 18.

The Complaint avers that, on March 25, 2014, Martins pled guilty to participating in a scheme with his co-conspirators to submit materially false and fraudulent mortgage loan applications, supporting documents and/or closing documents to mortgage lenders in order to obtain mortgage loan proceeds for his and his co-conspirators' financial gain. *Id.* at ¶ 21. Martins admitted that he was an employee of Wells Fargo and he used his position to falsely certify that certain bank accounts of applicants contained sufficient funds. *Id.* at 22. Martins also admitted to opening a bank account for 13 individuals that were not present at the bank, and faked their signatures, even though, according to Plaintiffs, it was "Wells Fargo's policy that the actual account owners must be present at the bank when the signature cards are signed and accounts are opened." *Id.* at ¶ 23. The Complaint also details various other fraudulent conduct committed by Martins that were contrary to Well Fargo's company policies. *See id.* at ¶¶ 24-31.

Martins received a sentence of one year in prison and three years of supervised release. *Id.* at ¶ 32. The other eight co-

conspirators also received prison terms and supervised release for their involvement in the scheme. *Id.* at ¶ 33. There is no dispute that neither Advantage nor Wells Fargo were indicted in Martins' fraudulent scheme. *See id.* at ¶ 34.

Plaintiffs Eugene Stravinsky, II, and his wife, Jeanette Stravinsky, were the principals of Advantage. *Id.* at ¶ 5. Plaintiffs allege that as a result of the criminal investigation of Martins and his co-conspirators, they were also investigated, and suffered significant loss from the scheme. *See id.* at ¶¶ 38-40. Plaintiffs indicate that "[a]t all times prior to the fraudulent scheme of Defendant Martins and his co-conspirators, Plaintiffs had an excellent . . . reputation in the industry, good will in their business and directly resulted in creating business contracts such as the Loan Purchase Agreement with Wells Fargo . . . ." *Id.* at ¶ 43. After the scheme, Plaintiffs claim that their business was "destroyed" due to the damage of their reputations. Id. at ¶ 40.

On July 14, 2017, Plaintiffs filed the instant action against Martins and Wells Fargo, asserting three causes of action. Count I, fraud, is lodged against Martins, alone. Counts II and III are asserted against Wells Fargo for "vicarious lability for the fraudulent acts of Defendant Jose P. Martins" and "negligent hiring," respectively. In the instant matter, Defendant moves to dismiss those two counts on the basis that the applicable statute

4

of limitations has run, and that the Complaint fails to state a claim under the theories of *respondeat superior* or vicarious liability.[3]

**DISCUSSION**

I.  **Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations and quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v.*

---

[3]   I note that on this motion, both parties submit additional documents in the form of certifications and public record. Each accuse the other of improperly filing extraneous evidence outside of the pleadings. Because my decision in this Opinion is based solely on the allegations of the Complaint, I will not determine whether, or which of, the parties' submissions I can consider on this dismissal motion.

*Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief . . . [a] complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citations and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 2016 U.S. App.

6

LEXIS 366, at *10 (3d Cir. Jan. 11, 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at *10-11 (citations, quotations, and brackets omitted).

## II. Statute of Limitations

In Count Two, Plaintiff alleges that because during the relevant time period of the mortgage scheme, Martins was an employee of Wells Fargo, acting within the scope of his employment as a loan officer, Wells Fargo is vicariously liable for Martins' fraudulent conduct. In that regard, Plaintiffs reason that Martins used his position in the bank to work in concert with others in order to receive personal financial gain, and that his acts were substantially within the authorized time and space of his employment. In Count Three, Plaintiffs allege that Wells Fargo negligently hired Martins and that the bank demonstrated willful indifference to Martins' conduct.[4]

---

[4] Curiously, while Plaintiffs allege that Martins and his co-conspirators solely carried out the scheme, they, nevertheless, allege in passing that "Wells Fargo participated in the conduct of Defendant Martins" without any factual allegations to support that assertion. Compl., ¶ 71. In any event, I need not address this

7

Defendant argues that Plaintiffs' state law causes of action are barred by the two-year statute of limitations that applies to negligence tort claims. In response, Plaintiffs concede that the two-year statute of limitations apply to Count III, which is based on negligence; on the other hand, they argue that Count II is fraud-based, and as such, it is subject to the six-year statute of limitations.

The parties do not dispute that in New Jersey, negligence claims are subject to a two-year statute of limitations. *See* N.J.S.A. 2A:14-2(a). Plaintiff also does not dispute that Count III, negligent hiring, is subject to the two-year statute of limitations. With that concession, Count III is clearly time barred. Plaintiffs' Complaint was filed on July 14, 2017, and thus, in order to timely bring a negligence claim, the alleged negligent conduct must have occurred on or after July 14, 2015. But, the Complaint alleges that all of the underlying wrongful conduct was committed outside of that time period. First, Plaintiffs aver that the fraudulent mortgage scheme began between March 2011 through November 2012. *See* Compl., ¶ 14. Second, the criminal defendants, including Plaintiffs' former employee, Joseph Divalli, were indicted on January 23, 2013 for their part in the fraud conspiracy. *See id.* at ¶ 12. Finally, Martins pled guilty

---

additional allegation as the Complaint is dismissed on other grounds.

to the charges on March 26, 2014. *Id.* at ¶ 21. Importantly, during this time, Plaintiffs were admittedly aware that these criminal defendants were facing mortgage fraud charges, because Plaintiffs were also the subject of the government's investigation. *See id.* at ¶¶ 36, 41. Therefore, even if the Court were to use the date March 26, 2014 — when Martins admitted to his role in the conspiracy and pled guilty — the Complaint, to be timely, should have been filed on or before March 26, 2016. Despite Plaintiffs' knowledge of the underlying issues or events, they did not bring suit until July 2017. Hence, Count III is clearly untimely. I note that Plaintiffs make no other arguments in connection with the timeliness of their negligence claim. Accordingly, Count III is dismissed with prejudice.

Count II, *respondeat superior* claim, stands on a different footing. Unlike negligence, in New Jersey, claims arising out of fraud, conspiracy, or breach of contract under a theory of *respondeat superior* are governed by a six-year statute of limitations. *Kretz v. Hernandez*, No. 12-3152, 2016 U.S. Dist. LEXIS 150809, at *14 (D.N.J. Oct. 31, 2016)(citing N.J.S.A. 2A:14-1; *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, No. 97-3496, 2006 U.S. Dist. LEXIS 2242, at *12-13 (D.N.J. Jan. 23, 2006)). Indeed, Defendant does not dispute this legal principle. As such, under the six-year of statute of limitations, as Defendant has tacitly acknowledged, Count II is timely filed.

## II. *Respondeat Superior*

As a general matter, under New Jersey law, "an employer can be found liable for the [act] of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." *Carter v. Reynolds*, 175 N.J. 402, 408 (2003). To succeed in bringing a *respondeat superior claim*, "a plaintiff must [allege] (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Id.*

In this case, neither side disputes that a master-servant relationship existed between Wells Fargo and Martins. The inquiry, then, is whether Plaintiffs have sufficiently alleged that Martins' alleged acts were within the scope of his employment. "The question whether or not the act done is so different from the act authorized is decided by the court if the answer is indicated; otherwise, it is decided by the jury." *Mason v. Sportsman's Pub*, 305 N.J. Super. 482, 498 (App. Div. 1997).

"Scope of employment" refers to those "acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Carter*, 175 N.J. at 411 (citations omitted). The New Jersey Supreme Court has adopted Restatement (second) of Agency sections 228 and 229 as guiding principles in

determining the scope of employment. *See Siemens Bldg. Techs., Inc. v. PNC Fin. Servs. Grp., Inc.*, 226 F. App'x 192, 195-96 (3d Cir. 2007). The relevant portions of the Restatement (Second) § 228 states:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits;
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master; and
>>
>> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorize, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Additionally, Restatement (Second) § 229 reads:

> (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
>
> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
>> (a) whether or not the act is one commonly done by such servants;
>>
>> (b) the time, place and purpose of the act;
>>
>> (c) the previous relations between master and the servant;

11

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent to which the departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

Importantly, "whether the conduct is intentional or negligent is generally irrelevant." *Cosgrove v. Lawrence*, 214 N.J. Super. 670, 676 (Law Div. 1986). It is not dispositive that the employee's tortious conduct violated a specific employer policy. *Wright v. Globe Porcelain Co.*, 72 N.J. Super. 414, 418 (App. Div. 1962); *Siemens Bldg.*, 226 F. App'x at 196.

In other words, it is of no moment that the complained-of conduct is criminal in nature; so long as that conduct was committed within the scope of employment, *respondeat superior* liability may attach. *See Roth v. First Nat'l State Bank*, 169 N.J. Super. 280, 286(App. Div. 1979)(explaining that an act may be within the scope of employment even though it is consciously


criminal or tortious). However, a fine line is drawn when the employee's intentional act is performed for his own purposes, such that it deviates from the business of the employer. In that situation, the employer cannot be reasonably held liable for the damage inflicted. *Gotthelf v. Property Management Sys., Inc.*, 189 N.J. Super. 237, 241 (App. Div. 1983)(citations omitted); *Snell v. Murray*, 117 N.J. Super. 268, 273 (Law Div. 1971), *aff'd* 121 N.J. Super. 215 (App. Div. 1972)("when a servant quits sight of the object for which he is employed, and, without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given")(citations omitted); *see also Gindin v. Baron*, 11 N.J. Super. 215, 220 (App. Div. 1951), *King v Patrylow*, 15 N.J. Super. 429, 434 (App. Div. 1951). Put differently, where the act of the servant is unauthorized, expressly or impliedly, or is merely in furtherance of the servant's own purposes, the master is not liable because the act is obviously not within the scope of the employment. *Wright v. Globe Porcelain Co.*, 72 N.J. Super. 414, 418 (App. Div. 1962)(citing *Coopersmith v. Kalt*, 119 N.J.L. 474 (E. & A. 1937); *Krolak v. Chicago Express, Inc.*, 10 N.J. Super. 60 (App. Div. 1950); and *Lustbader v. Traders Delivery Co.*, 193 Md. 433 (Ct. App. 1949)).

Conversely, "the liability of the master for the willful and malicious tortious acts of the servant at present extends to every

case where the act of the servant is committed with a view to the furtherance and discharge of his master's business and within the scope and limits of his employment." *Gindin*, 11 N.J. Super at 220.

Here, while Martins' conduct is criminal in nature, that fact in of itself is not dispositive. Rather, the issue is whether the scheme that he carried out can be said to be in the scope of employment, such that Wells Fargo would have to answer for Martin's acts, or conversely, whether Martins acted outside of his authority in order to enrich himself. I find that, as pled, the latter to be true.

I need look no further than the allegations in the Complaint. Plaintiffs allege that Martins pled guilty to forming a scheme in order to perpetuate mortgage fraud. In that endeavor, Plaintiffs explain, Martins submitted fraudulent loan applications and related documents, such as "false income statements of applicants," "false appraisals," and "fake gift letters" to financial institutions. Compl., ¶¶ 14, 16. As pled, Martins created "straw buyers," who then Martins recruited in order to obtain loan proceeds when the mortgage loans were funded. *Id.* at ¶ 15. In that regard, Martins also created "misleading certifications that certain bank accounts contained a specific amount of money, when [in] actuality, they contained less," *see id.* at ¶ 17, and he back dated deeds to makes sales of properties appear to have occurred more than 90 days prior to the loan

transaction, "ensuring that the properties qualified for financing under FHA." *Id.* at ¶ 20. What is more, Plaintiffs aver that Martins falsely certified that certain bank accounts of applicants contained funds, and that he opened bank accounts for individuals who were not present at the bank, which were all against Wells Fargo's policy. *Id.* at ¶¶ 22-23.

In short, as Plaintiffs put it, "Martins facilitated the fraud by providing documentation that was required to make the transaction look legitimate. The purpose of the scheme was to fraudulently show that the borrower had the funds necessary to purchase the property and the gift letter falsely stated that the borrower was obtaining funds towards the down payment from a close family related or friend as a gift." *Id.* at ¶ 31. Martins' purpose in participating in such a scheme, as explained by Plaintiffs, is to enrich himself and his co-conspirators. *See id.* at ¶ 15, 47.

Based on these allegations, Plaintiffs have painted a picture of an employee who used his position at Wells Fargo to obtain fraudulent mortgage loans to benefit himself. To do so, Martins acted outside of his authority as a bank employee by creating false documents, accounts and other financial records to conceal his fraud not only from victims of his crime, but also, from Wells Fargo, his employer. Applying these alleged facts to the factors

15

set forth in the Restatement (Second) §§ 228 and 229, I do not find that Martins acted within the scope of his employment.

First, while Martins, as a bank employee, performed certain loan-related tasks in connection with the fraudulent loans, he performed other acts that were clearly outside the purview of his job, such as creating false documents and financial records. And, by doing so, these acts did not occur within the authorized time and space limits of his employment. In fact, most of Martins' alleged fraudulent conduct were not calculated to serve Wells Fargo's interests; instead, his scheme harmed the bank. Certainly, it cannot be said that Wells Fargo reasonably expected that Martins would act in such a way. Perhaps, most importantly, not only did Martins' scheme depart from the normal method of accomplishing an authorized result, it was seriously criminal. Indeed, the scheme was the subject of a "wide-scale mortgage fraud investigation" conducted by both the state and federal government. Compl., ¶ 13. Ultimately, for his participating, Martins pled guilty to federal charges, and was sentenced to one year in prison and three years of supervised release. *Id.* at ¶ 32.

Accordingly, having considered the allegations in light of pertinent factors of the Restatement, I find that Wells Fargo cannot be held vicariously liable for Martins' conduct that was clearly performed outside the scope of his employment. As such, Count II is dismissed. Finally, because I further find that any

amendments to cure this aspect of Plaintiffs' allegation would be futile, I need not provide Plaintiffs any opportunity to cure.

## CONCLUSION

For reasons set forth above, Defendant's motion to dismiss is **GRANTED**; all claims against it are dismissed with prejudice. Plaintiffs are directed to submit proof of service with respect to defendant Martins within 3 days from the date of the Order accompanying this Opinion.

Dated:  May 14, 2019                              /s/ Freda L. Wolfson
                                                  Hon. Freda L. Wolfson
                                                  U.S. District Judge